## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BEACON NAVIGATION GMBH,

                          Plaintiff,

    v.

BAYERISCHE MOTOREN WERKE AG,
BMW OF NORTH AMERICA, LLC, AND
BMW MANUFACTURING CO., LLC,

                          Defendants.

Case No. 2:13-cv-11410-MAG-EAS

Hon. Mark A. Goldsmith
Mag. Elizabeth A. Stafford

## OPINION AND ORDER DENYING
## BMW'S MOTION TO STRIKE (ECF NO. 94)

In this patent infringement case, plaintiff Beacon Navigation GmbH ("Beacon") alleges that defendants Bayerische Motoren Werke AG, BMW of North America, LLC, and BMW Manufacturing Co., LLC (collectively, "BMW") infringe a Beacon patent on vehicle navigation technology, U.S. Patent No. 5,862,511 (the "'511 Patent").

Presently before the Court is BMW's motion to strike, which is directed to precluding Beacon from relying on certain computer source code as evidence of infringement. The parties have submitted written briefs explaining their positions on whether Beacon should be precluded from relying on the source code. ECF No. 94 ("BMW's Motion"); ECF No. 97 ("Beacon's Opposition"); ECF No. 99 ("BMW's

1

Reply"). Pursuant to Local Rule 7.1(f)(2), the Court will decide BMW's motion to strike without a hearing. E.D. Mich. LR 7.1(f)(2).

For the reasons stated in this opinion and order, the Court will **DENY** BMW's motion to strike.

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The '511 Patent, entitled "Vehicle Navigation System and Method," is directed to vehicle navigation technology. In its first amended complaint ("FAC"), Beacon alleges that BMW infringed Claims 1 and 3 of the '511 Patent (the "asserted claims") in connection with sales of vehicles with GPS navigation systems (the "accused vehicles" and the "accused navigation systems") prior to the '511 Patent's December 28, 2015 expiration date. ECF No. 60.

Along with related cases involving the '511 Patent,[1] this case was scheduled to move forward on the merits following an eleven-year stay pending a succession of proceedings in the United States Patent and Trademark Office (the "USPTO").

On October 26, 2022, the Court entered the scheduling order for this case. On October 6, 2023, following the close of fact discovery, BMW filed its present motion to strike. BMW's motion to strike arose from Beacon's admittedly delayed third-

---

[1] This case and related cases involving the '511 Patent once belonged to an even a larger group of related patent infringement cases involving additional Beacon patents. The Court has previously set forth a detailed procedural history of these cases. ECF No. 88, PageID.4120-4122. Only this case against BMW, which now only involves the '511 Patent, remains pending.

party discovery of necessary infringement evidence. In the context of the '511 Patent, an infringement determination on the merits requires the source code that describes how the accused navigation systems work. BMW makes the accused vehicles, but its supplier, Harman, makes the accused navigation systems, and holds the source code in confidence. Beacon served a subpoena on Harman more than 30 days before the close of fact discovery, but ultimately obtained and produced the source code after the close of fact discovery, and relied on the source code to allege infringement for the first time in its opening expert report on infringement.

In its motion to strike, BMW argues that Beacon violated Federal Rule of Civil Procedure 26(a) or (e), and moves for discovery sanctions under Federal Rule of Civil Procedure 37(c)(1). Specifically, BMW asks the Court: (1) to strike the portions of Beacon's infringement report that rely on the source code; (2) to preclude Beacon from relying on the source code; and (3) to award it reasonable costs and attorneys' fees related to Beacon's disclosure of the source code.

## II.    RELEVANT DISCOVERY EVENTS

In the written briefs, BMW and Beacon rely heavily on the history of this case to support their arguments for and against discovery sanctions, and present statements of facts about the relevant discovery events. ECF No. 94, PageID.4390-4395 (BMW's Mot. Br. 1-6); ECF No. 97, PageID.4965-4973 (Beacon's Opp'n Br. 2-10).

3

As noted above, the Court entered the scheduling order for this case on October 26, 2022. Under the scheduling order, fact discovery commenced on October 17, 2022 and closed on July 27, 2023. The nine-month fact discovery period was followed by a three-month expert discovery period, with deadlines measured from the Court's *Markman* decision. ECF No. 59. The Court issued its *Markman* decision on July 28, 2023, and thereby set the deadlines for expert discovery. ECF No. 87. Under stipulated amendments, the Court extended the deadlines for opening expert reports and rebuttal expert reports to September 8, 2023 and October 9, 2023, and extended the close of expert discovery to November 17, 2023. ECF No. 90; ECF No. 96.

Aside from initial disclosures and contentions, the parties do not discuss any discovery events from the first eight months of fact discovery. However, as Beacon points out, the Court has instructed the parties in this case and related cases involving the '511 Patent to work with the Special Master toward settlement. From October 2022 to June 2023, Beacon reached settlement agreements with the defendants in all of the other still pending related cases. Beacon explains that, to focus on and direct resources toward settlement, it delayed third-party discovery of source code. In this case, Beacon proceeded to seek source code from Harman when the close of fact discovery was approaching and it was clear that BMW was not going to settle.

Beacon served a subpoena on Harman on June 23, 2023, requesting document production on July 14, 2023, and noticing a deposition on July 26, 2023. ECF No. 94-5 (BMW's Mot. Ex. D). On July 7, 2023, Harman objected to the subpoena as overly broad and unduly burdensome, and Beacon and Harman proceeded to meet and confer about the scope of discovery. ECF No. 97-6 (Beacon's Opp'n Ex. E); ECF No. 97-7 (Beacon's Opp'n Ex. F). In parallel, the parties discussed amending the scheduling order. ECF No. 97-2 (Beacon's Opp'n Ex. A). On July 26, 2023, Beacon submitted a stipulated amendment to extend fact discovery for source code production, including a provision to delay depositions of the parties until after source code production. ECF No. 94-6 (BMW's Mot. Ex. E).

On August 2, 2023, following their meet and confers, Beacon and Harman agreed on narrowing the scope of discovery to source code. Harman agreed to make the source code available for inspection, and provide a declaration that the source code is authentic and representative. Correspondingly, Beacon agreed to withdraw the other document requests, and not seek a deposition of Harman. ECF No. 97-7 (Beacon's Opp'n Ex. F).

On August 9, 2023, the Special Master advised Beacon that the Court was not going to enter the July 26, 2023 stipulation. On August 15, 2023, Beacon submitted a stipulated amendment to extend expert discovery by eleven days to accommodate its technical expert's vacation. The Court entered the stipulation on August 17, 2023,

5

thus extending the deadline for opening expert reports from August 28, 2023 to September 8, 2023. ECF No. 90.

It turned out that in the meantime, on September 5, 2023, Harman made the source code available for inspection. Pursuant to the protective order for this case, Harman made the source code available for inspection by giving the parties access to a source code computer. Together with their technical experts, the parties took turns on the source code computer, reviewed the source code, and selected excerpts, and produced the source code by requesting printouts of their selected excerpts from Harman. ECF No. 79, PageID.4025-4037.

After reviewing the source code on September 5-6, 2023, Beacon served its opening expert report on infringement ("infringement report") on September 8, 2023, and later produced the source code from its review on September 14, 2023. BMW reviewed the source code on September 20-21, 2023, served its rebuttal expert report on infringement ("non-infringement report") on October 9, 2023, and later produced the source code from its review on October 12, 2023.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 37(c)(1) provides that district courts may exclude evidence that a party seeks to offer but has failed to disclose pursuant to the party's discovery obligations under Federal Rule of Civil Procedure 26(a) and (e).

6

Even "without awaiting a discovery request," Rule 26(a)(1) requires a party to disclose the information and identify the witnesses that the party "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). Rule 26(e)(1) requires a party who learns that an initial disclosure or a response to a discovery request is "incomplete or incorrect" to "supplement or correct" the initial disclosure or the discovery response "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37(c)(1), a party who fails to disclose information or identify a witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quotation omitted). *See also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.") (quotation omitted). "Although exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e), Rule 37(c)(1) provides the district court with the option to order alternative

sanctions 'instead of' exclusion of the late or undisclosed evidence 'on motion and after giving an opportunity to be heard.'" *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting Fed. R. Civ. P. 37(c)(1)).

## IV.   ANALYSIS

At the outset, the Court notes that it was evident when this case was scheduled that the source code from Harman was necessary infringement evidence. In its motion to lift the stay, Beacon explained that "the best evidence of [infringement] should be found in source code in possession of defendants, or their suppliers," and urged the Court to open discovery "so this case can move forward on the merits." ECF No. 53, PageID.3184. Likewise, in the scheduling order, the Court noted that Beacon "will need to conduct discovery on … patent infringement" and "expects that discovery will need to include some discovery … of Defendant's third-party vendors who provide the accused GPS systems." ECF No. 59, PageID.3212.

Beacon does not dispute BMW's argument that review and production of source code was the subject of fact discovery, not expert discovery. *See*, *e.g.*, *Finjan, LLC v. Qualys Inc.*, 2020 U.S. Dist. LEXIS 210427, at *4-*5 (N.D. Cal. Nov. 10, 2020) ("The plain language of Rule 26 makes clear that expert discovery means discovery *of* the expert, not *by* the expert.") (collecting cases).

### A.      Rule 26(a) or (e)

As a preliminary matter, Beacon argues that the Court need not turn to Rule 37(c)(1) because BMW has not established a violation of Rule 26(a) or (e). Relevant to the below discussion, Beacon does not dispute that it produced the source code after the close of fact discovery, and relied on the source code to allege infringement for the first time in its expert report.

As to a discovery violation, BMW argues that Beacon's disclosure of the source code was untimely for two reasons. First, BMW argues that the disclosure was untimely because Beacon did not timely seek the source code and supplement its infringement contentions. Second, BMW argues that the disclosure was untimely because Beacon did not obtain the source code during fact discovery. Beacon does not directly rebut these points. Rather, Beacon urges the Court to consider the history of this case, arguing that it supports a finding that Beacon's disclosure of the source code was not untimely. Among other things, Beacon points to the stipulated amendment to extend fact discovery and BMW's knowledge of Beacon's plan to obtain and rely on the source code.

Although the parties do not discuss the provisions of Rule 26 separately, the Court finds that Beacon violated Rule 26(e) through its untimely disclosure of the source code, particularly with respect to its infringement contentions. During fact discovery, Beacon informed BMW that it would rely on "source code" from

"suppliers," but never produced any source code or relied on any source code to allege infringement. Specifically, in its infringement contentions, Beacon cites the behavior of position cursors during observational testing, and reserves right to amend "upon receipt of discovery from BMW and/or its suppliers, particularly source code and accompanying documentation that shows the detailed operation of the navigation systems." ECF No. 94-4, PageID.4427 (BMW's Mot. Ex. C p. 1). Similarly, in response to BMW's interrogatories on Beacon's infringement theories, Beacon informed BMW that it would supplement its infringement contentions "when additional discovery is obtained from Defendants and their suppliers." ECF No. 94-8, PageID.4821-4822 (BMW's Mot. Ex. G p. 6-7).

As to Beacon's disclosure of the source code, the Court finds that BMW's claims of untimely disclosure are exaggerated as to identifying Harman as the supplier. Specifically, BMW argues that by identifying "suppliers," and not "Harman," Beacon never informed BMW that it would rely on source code from Harman. However, the subpoena, as well as the simple fact that Harman makes the accused navigation systems, show that BMW had notice that Beacon would rely on source code from Harman.

However, as distinguished from the actual source code and its description of how the accused navigation systems work, Beacon's infringement contentions merely informed BMW of Beacon's plan to obtain and rely on the source code.

10

Without references to the actual source code, Beacon's infringement contentions were necessarily "incomplete," and Rule 26(e)(1) therefore required Beacon to "supplement" them "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). In addition to the plain language of Rule 26(e), the scheduling order is clear on Beacon's obligation to timely seek the source code in an effort to "seasonably amend" its infringement contentions. As stated in the scheduling order, Rule 26(e) required Beacon to "timely conduct discovery so that these contentions can be updated as soon as possible." ECF No. 59, PageID.3216.

Contrary to its obligation to timely seek the source code and supplement its infringement contentions, Beacon served the subpoena on Harman on June 23, 2023, eight months after the October 17, 2022 commencement of fact discovery. As a result, Beacon never supplemented its infringement contentions, and instead, relied on the source code to allege infringement for the first time in its infringement expert report. Moreover, because review and production of source code was the subject of fact discovery, the scheduling order in any event required Beacon to obtain the source code during fact discovery. Beacon produced the source code on September 14, 2023, seven weeks after the July 27, 2023 close of fact discovery. Because Beacon did not meet its obligation to timely seek the source code and supplement its infringement contentions, and in any event did not obtain the source code during fact

11

discovery, the Court finds that Beacon's disclosure of the source code was untimely under Rule 26(e).

Given the scheduling order and the plain language of Rule 26(e), the Court is not persuaded by Beacon's argument that the history of this case supports a finding that Beacon's disclosure of the source code was not untimely. As to supplementing its infringement contentions, Beacon argues that it did not withhold the source code, explaining that it could not disclose what it did not possess. However, this simply goes to the point that Beacon did not meet its obligation to timely seek the source code. As to the scheduling order, Beacon argues that it would have timely produced the source code under the stipulated amendment to extend fact discovery, and had no reason to expect that the Court would not enter the stipulation. However, Beacon's argument refers to the July 26, 2023 stipulation to extend fact discovery, which Beacon expressly withdrew when it submitted the August 15, 2023 stipulation to extend expert discovery. When Beacon produced the source code on September 14, 2023, there was no uncertainty that its production was seven weeks after the July 27, 2023 close of fact discovery.

The Court notes that Beacon's remaining arguments do not go to showing that the disclosure was timely under Rule 26(e), but rather, to whether the untimely disclosure was substantially justified or harmless under Rule 37(c)(1). For example, Beacon argues that BMW knew Beacon's plan and could have obtained the source

code from Harman on its own. However, Beacon has the burden of proving infringement, and BMW's ability did not absolve Beacon's obligation to obtain necessary infringement evidence. While the points Beacon raises in its remaining arguments are not insignificant in the context of this case, the conclusion that Beacon did not meet its discovery obligations under Rule 26(e) cannot be avoided. Accordingly, the Court will address Beacon's remaining arguments in the below Rule 37(c)(1) discussion.

## B.    Rule 37(c)(1)

Under Rule 37(c)(1), a party who fails to disclose information or identify a witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To guide the exclusion analysis under Rule 37(c)(1), the Sixth Circuit has adopted five factors for determining whether a party's non-disclosure of evidence is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748-49 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). District

courts have broad discretion in applying the factors and need not apply each factor rigidly. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019).

The Court will now analyze the factors applying the facts of this case.

As to the first factor, the Court must weigh the surprise to BMW by Beacon's reliance on the source code. BMW argues that it was surprised because Beacon relied on the source code to allege infringement for the first time in its infringement expert report. On the other hand, Beacon argues that BMW was not surprised because BMW knew Beacon's plan to obtain and rely on the source code and could have obtained the source code from Harman on its own.

In the context of this case, the Court agrees with Beacon. Both parties knew from the beginning of this case that the source code could be obtained and analyzed to definitively confirm whether or not the accused navigation systems supplied to BMW by Harman infringed the '511 Patent. While Beacon has the burden of proving infringement, nothing prevented BMW from obtaining the source code from its own supplier. BMW could have simply asked Harman if its code "rotated" and "integrated" velocity vectors as required by the asserted claims and then subpoenaed the source code under a confidential designation to support its non-infringement theories. As discussed above, the Court finds that BMW had notice that Beacon would obtain and rely on source code from Harman, as given by the simple fact that Harman makes the accused navigation systems. While the contents of the source

14

code were previously unknown, this was true for both parties. Rather than directing its considerable resources to litigating many other issues, BMW could have obtained the source code for itself early in this case and then immediately filed a motion for summary judgment of non-infringement.

Because BMW knew Beacon's plan to obtain and rely on the source code, and, for the benefit of both the parties and the Court, could have avoided any surprise by obtaining the source code on its own early in this case, the Court finds that the first factor weighs against exclusion.

The second factor and the third factor are related. As to the second factor, the Court must weigh BMW's ability to cure the surprise by Beacon's reliance on the source code. As to the third factor, the Court must weigh the extent to which allowing Beacon to rely on the source code would disrupt trial.

Initially, the Court notes that a trial date has not been set, and much if not all of the surprise has already been cured during expert discovery. As noted above, the parties and their technical experts have reviewed the source code and submitted their expert reports on infringement. Ultimately, it appears that the late production of the source code has harmed Beacon more than BMW. Beacon was only able to review the source code days before the deadline for opening expert reports. On the other hand, BMW was able to review the source code over two weeks before the deadline for rebuttal expert reports. Although BMW maintains that it had to rush the

15

preparation of its non-infringement report, BMW does not dispute that it declined Beacon's offer to extend the deadline, or that its technical expert has presented a complete non-infringement analysis. Indeed, the Court notes that BMW has recently filed a motion for summary judgment of non-infringement based on its technical expert's analysis, arguing that the accused navigation systems do not practice multiple claim limitations.

Nonetheless, BMW argues that it cannot cure the surprise without reopening fact discovery to depose Harman about the source code, and that reopening fact discovery would likely disrupt trial. In response, Beacon disputes that reopening fact discovery is necessary. Specifically, Beacon explains that Beacon and Harman agreed that a deposition of Harman is unnecessary, that BMW never served its own subpoena on Harman. In reply, BMW explains that the need to depose Harman only arose from Beacon's reliance on the source code.

The Court finds that BMW can cure any remaining surprise by Beacon's reliance on the source code without disrupting trial. BMW explains that it wishes to depose Harman about the authenticity, implementation, and representativeness of the source code. Although Beacon and Harman agreed that a deposition of Harman is unnecessary, the Court notes that Beacon was making concessions to resolve Harman's objection to the subpoena. And although BMW never served its own subpoena on Harman, the Court accepts that the need to depose Harman only arose

from Beacon's reliance on the source code. In the interest of curing any remaining surprise, the Court can grant BMW leave to depose Harman. Since a trial date has not been set, BMW can schedule a deposition of Harman during the pendency of dispositive motions. As well, the Court will give BMW leeway to modify or supplement its non-infringement theories before trial, including in connection with summary judgment if BMW is able to depose Harman early enough. Because BMW can cure any remaining surprise without disrupting trial, the Court finds that both the second factor and the third factor weigh against exclusion.

As to the fourth factor, the Court must weigh the importance of the source code. The Sixth Circuit has explained that importance "can cut both ways." *Bisig*, 940 F.3d at 220. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Id.* (quotation omitted). Here, the parties agree that the source code from Harman is necessary infringement evidence. BMW argues that the importance weighs in favor of exclusion because Beacon delayed seeking the source code. Beacon argues that the importance weighs against exclusion because discovery is complete and this case is ready to move forward on the merits. The Court agrees with Beacon. The Court favors resolution on the merits, particularly in a case like this one, where the parties have been involved in litigation for over a decade, and have worked with the Special Master toward settlement without being able to reach a settlement agreement. Because the source code from

Harman is necessary infringement evidence, and this case is ready to move forward to an infringement determination on the merits, the Court finds that the fourth factor weighs against exclusion.

As to the fifth factor, the Court must weigh Beacon's explanation for the untimely disclosure. BMW argues that Beacon delayed seeking the source code, risked running out of time, and lacked any reasonable expectation of obtaining the source code during fact discovery. On the other hand, in addition to arguing that delaying for settlement was reasonable, Beacon argues that it timely sought and obtained the source code. Specifically, Beacon argues that it timely sought the source code because the subpoena was timely, and that it timely obtained the source code because the meet and confers between Beacon and Harman were reasonable.

The Court finds that Beacon's explanation for the untimely disclosure of the source code is unreasonable. Initially, the Court notes that delaying third-party discovery of source code was Beacon's own litigation strategy. Beacon does not dispute that it knew about Harman, planned to obtain and rely on the source code, and could have sought the source code earlier. Rather, Beacon explains that it served the subpoena on Harman "[w]hen it finally became clear that BMW was not going to settle" and "did so at this time because it felt that its resources were more appropriately directed towards settlement." ECF No. 97, PageID.4975, 4986 (Beacon's Opp'n Br. 12, 23). The Court appreciates that Beacon followed its

instruction to work with the Special Master toward settlement. However, compliance with the scheduling order necessarily entails parallel, not successive, settlement discussions and fact discovery. Beacon does not cite any suggestion from the Court or the Special Master to focus on settlement to the exclusion of conducting fact discovery, let alone as to the source code required to inform the merits.

In any event, Beacon risked running out of time to obtain the source code during fact discovery. As set forth above, Beacon served the subpoena on Harman on June 23, 2023, five weeks before the July 27, 2023 close of fact discovery. Beacon requested document production on July 14, 2023, leaving Harman three weeks to make the source code available for inspection, and the parties two weeks to review and produce the source code.

Although the subpoena was technically timely, Beacon does not assert that experienced counsel would have reasonably expected the subpoena to be timely in the real-world, including under the protective order for this case. Specifically, Beacon does not assert that three weeks was a reasonable time for Harman to identify the source code and furnish the source code computer. Likewise, Beacon does not assert that two weeks was a reasonable time for the parties to schedule access to the source code computer, review the source code, and produce the source code through Harman. Moreover, to state the obvious, Beacon made no allowance for the contingency that Harman would object to the subpoena. While Beacon cites the

reasonableness of the meet and confers as showing timeliness, Beacon does not suggest that Harman unreasonably objected to the subpoena in the first place.

Because Beacon's explanation for the untimely disclosure of the source code is unreasonable, the Court finds that the fifth factor weights in favor of exclusion.

In summary, the Court has analyzed the factors applying the facts of this case, and found that four of the five factors weigh against exclusion. The Court therefore concludes that Beacon's untimely disclosure of the source code from Harman was harmless. Accordingly, the Court will **DENY** BMW's motion to strike as to all of BMW's requests for discovery sanctions.

## V.     CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** BMW's motion to strike.

**SO ORDERED**

Dated: December 28, 2023          s/Mark A. Goldsmith
Detroit, Michigan                 MARK A. GOLDSMITH
                                  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2023.

                                  s/Jennifer McCoy
                                  Case Manager